522 So.2d 533 (1988)
Connie CALL, As Personal Representative of the Estate of Buck Call, Deceased, Appellant,
v.
Antonio TIRONE, M.D., and Ira Joel Abramson, M.D., Appellee.
No. 86-2950.
District Court of Appeal of Florida, Third District.
March 29, 1988.
*534 Zuckerman, Spaeder, Taylor & Evans and G. Richard Strafer and Ronald B. Ravikoff and Humberto J. Pena, Coral Gables, for appellant.
Lanza & O'Connor, Nancy Little Hoffman, Ft. Lauderdale, for appellee Joel Abramson, M.D.
Lombana & Bass and Judith A. Bass, Miami, for appellee Antonio Tirone, M.D.
Before BASKIN, FERGUSON and JORGENSON, JJ.
PER CURIAM.
Four days after a gallbladder operation, Buck Call died from a fatal attack of pulmonary embolism when blood clots blocked the flow of blood through to his heart. His widow brought this action alleging malpractice by the treating physicians. This appeal is from a jury verdict finding no negligence on the part of the defendant physicians.
An issue at trial was whether the physicians should have administered blood-thinning medication, specifically Heparin, to prevent the fatal post-operation clotting. Both parties necessarily relied on the testimony of experts.
Mrs. Call argues that a new trial should be granted because defense counsel, over her repeated objections, was permitted to cross-examine her primary expert using medical writings critical of Heparin without establishing the requisite foundation as to the reliability and authoritativeness of the articles. It is settled by statute, case law, and treatises, that statements contained in medical literature cannot be used to cross-examine a witness unless the literature is established to be a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. § 90.706, Fla. Stat. (1985); Hemingway v. Ochsner Clinic, 608 F.2d 1040 (5th Cir.1979); Tallahassee Memorial Regional Medical Center v. Mitchell, 407 So.2d 601 (Fla. 1st DCA 1981); see also Medina v. Variety Children's Hosp., 438 So.2d 138 (Fla. 3d DCA 1983); M. Graham, Handbook of Fla. Evidence, § 90.706 (1987); Annotation: Use of Medical or Other Treatise In Cross-Examination of Expert Witness, 60 A.L.R.2d 77 (1958). The record reflects that defense counsel on four occasions improperly called the jury's attention to medical articles without first establishing the authoritativeness of those treatises.
In one instance the plaintiff's expert, Dr. Kanarek, was asked whether he was familiar with a study entitled "Failure of Low Dose Heparin To Prevent Significant Thromboembolic Complications In High Risk Surgical Patients" which, allegedly, was conducted in a South African hospital. Dr. Kanarek responded that he was not familiar with the article and asked to see a copy of it. Defense counsel then stated that he did not have a copy of the article. An objection was overruled and a motion to strike the question was denied; defense counsel was instructed to "go ahead" with cross-examination. In the course of that cross-examination defense counsel concluded that although he had no copy of the article he was "just going by the title" and that "it's pretty clear to me it says failure of." The point was thus made, based on the medical article that had not been authenticated *535 or established as authoritative, that administering Heparin would not have prevented the deceased's fatal embolism. Mrs. Call contends that defense counsel had no intent to authenticate the actual existence of the treatise.
In another instance defense counsel asked Dr. Kanarek if he was familiar with an article published in the journal Cardiovascular Surgery entitled "Anti-Thrombosis: Prevention and Heparinized Complications." Before Dr. Kanarek could answer counsel added that the article was "a seven year survey by cardiovascular and general surgeons operating in a seven year period [between] 1976 and 1982." Dr. Kanarek answered that he was not familiar with the study or the article. In response to further questions, that made implicit reference to the same article, Dr. Kanarek responded that while studies might exist showing Heparin-related complications, he would question their research methodology. Defense counsel's next question then referred directly to the article:
Q. Let me ask you if I may: How about a seven year period in which 5,837 operations were performed in the Department of General Vascular Surgery?
Again by the question defense counsel impermissibly placed more of the substance of the article before the jury. Nevertheless, another plaintiff objection was overruled.
On a third occasion counsel for one of the defendants attempted to cross-examine Dr. Bolton, an expert witness for the other defendant, and in clear reference to the same article asked Dr. Bolton:
Q. In fact, it wouldn't surprise you a bit that various journals have cited that in studying Heparin [versus] non-use of Heparin that more patients have died from pulmonary thromboembolism that have been Heparinized than those who did not have Heparin?
The trial court sustained the objection on grounds that the question was "too broad." Only then was the doctor asked specifically about the Cardiovascular Surgery article and given an opportunity to answer that he had never read it.
Finally, the unauthenticated medical writings became a feature in closing arguments to the jury. For example, the defense argued:
Dr. Kanarek in response to Mr. Womack said your study isn't good enough for me. I want to see somebody over 40. I want to see a lot of people in that study and I want to see a control group of those who they gave Heparin to and those they didn't. Ladies and gentlemen, I had such an article. I had such a study of over 3,000 patients and I stood right here.
Plaintiff's objection to the argument was overruled.
Neither of the two articles at the center of the controversy was established to be authoritative by either a witness or a finding of the court. The calculated and egregious violation of the evidentiary rule was indeed harmful, requiring a new trial. Because of our holding on this point, there is no need to reach other issues raised in this appeal.
Reversed and remanded for a new trial.