660 So.2d 1109 (1995)
GOODYEAR TIRE & RUBBER COMPANY, INC., Appellant,
v.
Betty ROSS and Eston Ross, Appellees.
No. 93-3369.
District Court of Appeal of Florida, Fourth District.
August 30, 1995.
Rehearing and Clarification Denied October 12, 1995.
*1110 Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, and Charles H. Damsel, Jr., of Damsel & Gelston, P.A., West Palm Beach, for appellant.
Kevin F. Richardson of Clyatt & Richardson, P.A., West Palm Beach, for appellee.
FARMER, Judge.
The Solid Waste Authority of Palm Beach County (SWAPBC) contracted with Wells Fargo Guard Services for security services at a landfill site operated by SWAPBC. Betty Ross, an employee of Wells Fargo, was working security at the entrance to the landfill site when a portable rubber speed bump made and sold by Goodyear Tire & Rubber Company (Goodyear), and distributed by R.C. Musson Rubber Company (Musson), became dislodged and injured her. Ross sued SWAPBC, Goodyear and Musson. Before trial, she settled with SWAPBC. During her presentation of evidence, she read to the jury several responses by SWAPBC to her pretrial requests for admissions. At that point, she voluntarily dismissed SWAPBC and persuaded the trial judge that the fact of the settlement should not be disclosed to the jury. We reverse.
We conclude that this circumstance is governed by Dosdourian v. Carsten, 624 So.2d 241 (Fla. 1993), and Ward v. Ochoa, 284 So.2d 385 (Fla. 1973). In Dosdourian, the plaintiff moved in limine to prevent any mention that he had entered a settlement agreement with defendant DeMario in return for payment of her policy limits and her continued participation in the lawsuit. The trial judge ruled that such agreement could be disclosed only through cross-examination if DeMario took the stand at the trial, and prohibited the DeMario's codefendant, Dosdourian, from raising the issue if she herself called DeMario as a witness. In addition, Dosdourian's motion to dismiss DeMario as a defendant was denied.
During the trial, plaintiff introduced DeMario's deposition taken before the settlement. Because DeMario did not testify at trial, the jury did not know of the settlement agreement between DeMario and the plaintiff. Dosdourian appealed, arguing that the jury should have been apprised of the existence of the settlement agreement under Ward, which requires disclosure to the jury of any "Mary Carter" agreements. Plaintiff argued that, as DeMario had settled for a fixed amount, his agreement with her did not have to be disclosed to the jury because it was not a true "Mary Carter" agreement in that it did not provide that the settling defendant could reduce her liability by staying in the litigation. The court rejected this argument, holding that such an agreement falls within the scope of "secret settlement agreements" which must be disclosed to the trier of fact under Ward.
The court discussed examples where the settling codefendant could influence the trial, and noted that even "[s]imple inaction on the part of one defendant can adversely affect the codefendant." 624 So.2d at 247. Moreover, the court commented that "where, as here, there was a settlement, the jury was entitled to weigh the codefendant's actions in light of its knowledge that such a settlement has been reached." 624 So.2d at 247 n. 4. The case was remanded for a new trial, leaving intact the quasi-Mary Carter agreement, but directing that it be admitted into evidence upon the request of the codefendant.
This case is similar to Dosdourian because here the judge limited any exploration of the *1111 settlement agreement between Ross and SWAPBC to cross-examination of SWAPBC for impeachment purposes only. Later, the pretrial admissions of SWAPBC were read; and, without a live witness testifying, Goodyear had no opportunity to cross-examine on the admissions read to the jury. It was only at this point that SWAPBC was dismissed as a party, which Ross admits was a tactical decision to preclude Goodyear from placing the fact of the settlement agreement before the jury. The failure to disclose the settlement agreement with SWAPBC to the jury requires a new trial. Because the liability issues are interrelated, we reverse for a new trial on all issues.
To foreclose other errors in the retrial, we comment on the admissibility of testimony of the expert witness Ramisch. He may be the world's foremost expert on traffic control devices, but it does not appear that he knows any more than we do about portable rubber speed bumps. We agree that it is not enough that the witness be qualified to propound opinions on a general subject; rather he must be qualified as an expert on the discrete subject on which he is asked to opine. United Technologies v. Indus. Risk Insurers, 501 So.2d 46 (Fla. 3d DCA 1987); see also Sea Fresh Frozen Prod. Inc. v. Abdin, 411 So.2d 218 (Fla. 5th DCA), rev. denied, 419 So.2d 1195 (Fla. 1982) (doctorate in marine chemistry did not qualify witness, who had done no studies in marine algae growth or its control, to testify as to the slipperiness of algae). Also the results of an experiment are inadmissible if conducted under dissimilar circumstances. Husky Indus. Inc. v. Black, 434 So.2d 988 (Fla. 4th DCA 1983).
REVERSED.
GLICKSTEIN and SHAHOOD, JJ., concur.