GOSHORN, Judge.
Appellants Tom and Karen Kirkpatrick raise two issues in this appeal from a final judgment entered pursuant to a jury verdict finding that Dr. Wolford did not negligently cause the death of the Kirkpatricks’ newborn son. We find that one issue merits discussion but affirm.
Appellants argue that the trial court erred in determining that certain medical texts were authoritative for use in cross-examination of their experts. They contend that the preponderance of the evidence did not support a finding of authoritativeness and also assert that the standard for determining authoritativeness of medical texts should be at least “clear and convincing” evidence.
THE FACTS
Prior to trial, Wolford filed a motion for determination of authoritativeness of certain technical bulletins and committee opinions of *709 the American College of Obstetricians and Gynecologists (ACOG). The motion noted that two of Appellants’ experts were present or former members of ACOG. Along with the motion, Wolford filed the affidavits of Dr. Stanley Zinberg, the director of practice activities for ACOG, Dr. Steven Clark, a Fellow of ACOG and the chairman of the ACOG technical bulletin committee on obstetrics, and Dr. Stanley Graven, the head of the division of child development and neurology at the University of South Florida. Zin-berg’s affidavit described ACOG’s membership and its purpose and role “to provide education and to serve as guidance for doctors as to the current state of medicine.” Clark’s affidavit stated that he considered the technical bulletins and committee opinions authoritative and that prior to publication the materials are extensively reviewed by committees of doctors chosen for their expertise. Graven’s affidavit stated that he considers these ACOG materials authoritative and that “[t]he ACOG publications that are currently in effect are the best available knowledge regarding the issues which they cover and are scientifically agreed upon nationwide.” In opposition to Wolford’s motion, Appellants submitted the affidavits of Dr. Richard Fields and Dr. Stuart Edelberg, identical in text, which stated that the ACOG materials are not “in and of themselves, authoritative” and that “the general obstetric community does not recognize [the materials] per se, as authoritative.”
At the hearing on Wolford’s motion, the trial court questioned the words “per se” in the affidavits of Appellants’ experts, noting that those words made the affidavits “a waffling opinion.” The court opined that “per se authoritative” is a higher standard than required by section 90.706 and that “the real question is whether they are generally acknowledged, accepted and utilized in the medical community.... [I]f so, then I think that makes them authoritative.” The court went on to state that “I don’t think it’s supposed to be one hundred percent accurate or per se authoritative. I think it’s supposed to be generally acknowledged, accepted and used.” At one point, Appellants’ attorney acknowledged that “[t]here absolutely is not” anything in medicine “that everybody agrees is absolutely authoritative.” During the hearing the trial judge stated that the “preponderance of the evidence” supported his finding that the ACOG materials were authoritative, although the order determining authoritativeness does not state what standard was used.
THE LAW
Section 90.706, Florida Statutes, provides:
Authoritativeness of literature for use in cross-examination.-Statements of facts or opinions on a subject of science, art, or specialized knowledge contained in a published treatise, periodical, book, dissertation, pamphlet, or other writing may be used in cross-examination of an expert witness if the expert witness recognizes the author or the treatise, periodical, book, dissertation, pamphlet, or other writing to be authoritative, or, notwithstanding nonrecognition by the expert witness, if the trial court finds the author or the treatise, periodical, book, dissertation, pamphlet, or other writing to be authoritative and relevant to the subject matter.
§ 90.706, Fla. Stat. (1995) (emphasis added). Hence, even absent acknowledgment by the cross-examined witness as to the authoritativeness of a writing, a trial court may properly make its own determination of authoritativeness.[1]
*710 We find that in the instant case the trial court did not abuse its discretion in determining that the ACOG technical bulletins and committee opinions were authoritative. The materials are issued by ACOG, an association of board-certified obstetricians and gynecologists. One of Wolford’s experts, Steven Clark, stated in his affidavit that he considered the ACOG bulletins and committee opinions authoritative, and he also described the extensive procedure by which the bulletins and opinions are formulated, noting that he did not know of other publications that went through such thorough expert review prior to publication. Additionally, both Clark’s and Zinberg’s affidavits stated that these ACOG materials were designed to educate and provide guidance for gynecologists and obstetricians in practice. Based on these sworn statements from Wolford’s experts, Wolford met his burden of establishing authoritativeness; even in the absence of acknowledgment of authoritativeness by the cross-examined experts themselves, authoritativeness was properly established by the acknowledgment of other experts. See Call v. Tirone, 522 So.2d 533 ( Fla. 3d DCA 1988).
However, we reject the notion that the “preponderance of the evidence” must support a determination that a medical text is authoritative. Such a requirement would easily lend itself to a battle of experts, with each party trying to bring in one more expert than the other so that “more weight” favors authoritativeness or nonauthoritativeness. Additionally, such a standard would embroil the court in a difficult and unnecessary determination regarding highly technical scientific matter. These materials are not admitted as substantive evidence, but only for purposes of cross-examination; the expert is free to explain his or her reason for disagreement with the text, such as a flawed methodology. As long as there is some credible evidence to support the conclusion that a text is authoritative, a trial judge acts within his or her discretion in deeming a medical text authoritative for cross-examination purposes. Having recognized this standard, we inherently reject Appellants’ proposed standard of “clear and convincing” evidence.
AFFIRMED.
COBB and PETERSON, JJ., concur.

. There is little Florida case law interpreting section 90.706 or providing guidance as to what standard must be met before a trial court may find a writing authoritative for cross-examination purposes where the cross-examined expert does not acknowledge that the text is authoritative. See Chesterton v. Fisher, 655 So.2d 170, 171 (Fla. 3d DCA 1995) (holding that trial court abused its discretion in not allowing party to establish authoritativeness of medical articles, noting that the burden of proving authoritativeness "is easily satisfied”) (citing Michael H. Graham, Handbook of Florida Evidence § 706.1 (1987)); Green v. Goldberg, 630 So.2d 606 (Fla. 4th DCA 1993) (holding that a learned treatise cannot be used to bolster a party’s own witness's testimony because it is hearsay if used as substantive evidence but allowing the use of an ACOG bulletin on cross-examination of the opposing party's witnesses); Brown v. Crane, Phillips, Thomas & Metis, P.A., 585 So.2d 947, 948 (Fla. 2d DCA 1991) (finding error in allowing attorney to read portions of *710 medical text aloud during cross-examination where expert did not acknowledge its authoritativeness and proponent "failed to establish independently the authoritativeness of the author or the text”); Call v. Tirone, 522 So.2d 533, 534 (Fla. 3d DCA 1988) ("It is settled by statute, case law, and treatises, that statements contained in medical literature cannot be used to cross-examine a witness unless the literature is established to be a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice.”).