734 So.2d 437 (1999)
Brian W. NASH, etc., et al., Appellants,
v.
GENERAL MOTORS CORPORATION, etc., et al., Appellees.
No. 97-2844.
District Court of Appeal of Florida, Third District.
April 28, 1999.
Rehearing Denied June 23, 1999.
*438 Poses & Halpern, Miami; Cooper & Wolfe and Sharon Wolfe and Nancy C. Ciampa, Miami, for appellants.
King & Spalding and Chilton Davis Varner and S. Samuel Griffin and Halli Cohn; Weissman, Dervishi, Shepherd, Borgo & Nordlund, Miami, for appellees.
Before JORGENSON, LEVY, and GERSTEN, JJ.
JORGENSON, Judge.
Appellant, Brian Nash, as the personal representative of the Estate of Maria Nash, appeals a final judgment in favor of the defendants, General Motors, Inc., and Potamkin Chevrolet, Inc., and the denial of his motion for new trial in a products liability action. For the reasons that follow, we reverse.
One Sunday, Maria Nash was driving to church with her two children in the back seat of her 1990 Chevrolet Corsica. Suddenly, a drunk driver crossed the center line and crashed into Ms. Nash's car. Although she was wearing her seatbelt, Ms. *439 Nash's head apparently struck the metal post that separates the windshield from the driver's door. According to the medical examiner, Ms. Nash later died as a result of her head injuries. In addition to the fatal head injury, Ms. Nash also suffered a ruptured spleen and a broken leg. Her two children survived. Ms. Nash's estate filed suit against the manufacturer of her vehicle, General Motors, on the theory that General Motors was strictly liable for a design defect which had been discovered in the seatbelt of the 1990 Chevrolet Corsica.
Following voir dire, the estate challenged a prospective juror for cause. Prospective juror Robles initially indicated that she harbored certain prejudices about personal injury lawsuits. For example, she explained how she was hospitalized in an intensive care unit due to an accident involving a hot water heater; however, despite her belief that there was a cause of action against the manufacturer, she felt compelled not to bring suit. Nevertheless, her more pointed comments indicated that she was unable to follow Florida law which provides for money damages as compensation for someone's wrongful death. Juror Robles was quite clear that she disapproved of awarding money as a means by which to compensate someone for the loss of a loved one. Conversely, in response to the estate's counsel's attempt to determine whether the estate was "starting off with an even playing field or a strike against [it]" as to juror Robles, Robles responded that she was a "fair person." The estate's counsel continued this line of questioning:
PLAINTIFF'S COUNSEL: I'm not suggesting that you're not a fair person, and I've asked if any of you have feelings and opinions about these things. Everybody has feelings and opinions.... I'm just trying to find out how they would play in terms of hearing a case of this magnitude.
JUROR ROBLES: I think I could be fair.
The trial court denied the estate's challenge for cause of juror Robles and, as a result, required the estate to expend one of its peremptory strikes.
Before voir dire and again before the trial started, the estate asked the trial court to exclude evidence of the other driver's intoxication. The estate argued that such evidence would be too prejudicial in the jury's consideration of comparative fault. In ruling on this matter, the trial court relied on this court's decision in Stellas v. Alamo Rent-A-Car Inc., 673 So.2d 940 (Fla. 3d DCA) (holding that a nonparty intentional tortfeasor should appear on the verdict form so as to permit the jury to apportion fault with the negligent tortfeasor), review granted, 683 So.2d 485 (Fla.1996), and decision quashed by 702 So.2d 232 (Fla.1997). Accordingly, the trial court found that the jury "had a right to know all the facts" concerning someone who appears on the verdict form.
At trial, General Motors presented Dr. Raddin as an expert to contest the origin of Ms. Nash's head injury and to oppose the medical examiner's finding as to the cause of Ms. Nash's death. Dr. Raddin was a kinematics[1] expert who held dual degrees in engineering and medicine. As part of his medical education, which he completed in 1975, Dr. Raddin participated in a general surgery internship. Since medical school, however, Dr. Raddin's career has exclusively dealt with the health issues of pilots who are exposed to unusual stress environments associated with flight and the study of how the human body responds to various impacts. Based on his investigation and understanding of kinematics, Dr. Raddin testified that he believed that Ms. Nash's head did not strike the metal post adjacent to the windshield, but instead projected out the driver's window and struck the hood of the other car. *440 The trial court allowed Dr. Raddin to further testify that he believed that the cause of Ms. Nash's death was not the trauma to her head, but rather a loss of blood from her ruptured spleen and broken leg.
First, the estate argues that the trial court erred by refusing to excuse prospective juror Robles for cause. It contends that juror Robles was not sufficiently rehabilitated after reasonable doubt as to impartiality was raised. We agree. When any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial verdict based solely on the evidence submitted and the instructions on the law given to her by the court, she should be excused. See Longshore v. Fronrath Chevrolet, Inc., 527 So.2d 922 (Fla. 4th DCA 1988); Club West v. Tropigas of Florida, Inc., 514 So.2d 426 (Fla. 3d DCA 1987). Here, juror Robles' clear reservations about awarding money damages for the death of a loved one, let alone her apparent disapproval of personal injury lawsuits, was sufficient to raise a reasonable doubt as to her impartiality and ability to follow the law.
Naturally, most everyone considers themselves to be a "fair person." Juror Robles' statement that she is a "fair person" may generally describe her personal philosophy, but was far from sufficient to demonstrate her ability and/or willingness to set aside her biases and render a fair and impartial verdict in the case before her. See Singer v. State, 109 So.2d 7, 24 (Fla.1959); Goldenberg v. Regional Import & Export Trucking Co. Inc., 674 So.2d 761, 764 (Fla. 4th DCA 1996).
Similarly, juror Robles' follow-up statement, "I think I could be fair," also fails. Though it approaches the issue, that statement, in light of her other remarks that certainly cast doubt as to her impartiality, does not unequivocally indicate that she could set aside her feelings and decide the case solely on the evidence submitted. Moreover, "[c]lose cases involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to impartiality." Goldenberg, 674 So.2d at 764. See also Coggins v. State, 677 So.2d 926 (Fla. 3d DCA 1996). Accordingly, we hold that the trial court erred by failing to excuse juror Robles for cause, thereby potentially jeopardizing the impartiality of the jury and causing the plaintiff to use a peremptory challenge that he later needed in order to strike an objectionable juror.
Second, the estate argues that the evidence of the other driver's intoxication was too prejudicial and irrelevant as to General Motor's negligence in designing a defective seatbelt. That issue is resolved by the supreme court's recent decision in Stellas v. Alamo Rent-A-Car, Inc., 702 So.2d 232 (Fla.1997) relying on Merrill Crossings Assoc. v. McDonald, 705 So.2d 560 (Fla.1997). In Stellas the court held that it was error to permit a nonparty intentional tortfeasor's name to appear on the verdict form so as to permit the jury to apportion fault between the nonparty and the negligent tortfeasor. Id. The trial judge in this case did not have the benefit of the supreme court's Stellas decision when he made his ruling. In fact, the trial court accurately followed the law in Stellas as set forth by this court at that time. Nonetheless, "[d]ecisional law and rules in effect at the time an appeal is decided govern the case even if there has been a change since time of trial." Lowe v. Price, 437 So.2d 142, 144 (Fla.1983); see also Wheeler v. State, 344 So.2d 244 (Fla.1977); Collins v. Wainwright, 311 So.2d 787 (Fla. 4th DCA 1975).
Moreover, the act of causing injury from driving a motor vehicle on the public roadways while intoxicated is an intentional tort.[2]See Ingram v. Pettit, 340 *441 So.2d 922 (Fla.1976) (holding that driving after voluntarily drinking to the point of intoxication is an intentional act creating known risks to the public thereby warranting punitive damages for injuries resulting from such act). See also In re Ray, 51 B.R. 236 (9th Cir. BAP 1985) (holding that injuries caused by the act of driving while intoxicated is an intentional tort rendering debts arising therefrom nondischargeable in bankruptcy); In re Fielder, 799 F.2d 656 (11th Cir.1986). Here, it was error for the drunk driver, an intentional tortfeasor, to appear on the same verdict form as General Motors, the negligent tortfeasor in a products liability action.[3]
Reversed and remanded for a new trial.
GERSTEN, J., concurs.
LEVY, J., concurs in result only.
NOTES
[1] "[A] branch of dynamics that deals with aspects of motion (as acceleration and velocity) apart from considerations of mass and force." Webster's Third New International Dictionary 1243 (1986).
[2] The record reflects that the driver of the other car had a blood alcohol content of .15 percent at 6:07 p.m. and .14 percent at 7:21 p.m. Thus, at the time of the accident, approximately 5:00 p.m., the other driver was clearly intoxicated as a matter of law. See § 316.193(1)(b), Fla. Stat. (1995).
[3] This also moots the estate's complaint regarding the special jury instructions granted General Motors on the issue of comparative fault.

To preclude other errors in the retrial, we consider the admissibility of Dr. Raddin's testimony as an expert witness. We agree with the estate in that Dr. Raddin was not competent to testify as to the cause of Ms. Nash's death; however, Dr. Raddin was indeed competent to testify as to injury causation. See, e.g., Goodyear Tire & Rubber Co. v. Ross, 660 So.2d 1109 (Fla. 4th DCA 1995); Smithson v. V.M.S. Realty, Inc., 536 So.2d 260 (Fla. 3d DCA 1989); United Technologies Communications Co. v. Industrial Risk Insurers, 501 So.2d 46 (Fla. 3d DCA 1987).