795 So.2d 126 (2001)
HYUNDAI MOTOR COMPANY and Hyundai Motor America, Appellants/Cross-Appellees,
v.
Anthony J. FERAYORNI, as Personal Representative of the Estate of Paulette Jo Ferayorni, Appellee/Cross-Appellant.
Nos. 4D00-643, 4D00-980.
District Court of Appeal of Florida, Fourth District.
August 15, 2001.
Rehearing Denied October 10, 2001.
*128 Francis M. McDonald of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando; Cabaniss, Conroy & McDonald, LLP, Orlando, (withdrawn after filing brief); Leslie G. Landau and Robert A. Brundage of McCutchen, Doyle, Brown & Enersen, LLP, San Francisco, CA; for appellants/cross-appellees.
Thomas D. Lardin of Thomas D. Lardin, PA, Fort Lauderdale, for appellee/cross-appellant.

ON MOTIONS FOR REHEARING, REHEARING EN BANC, AND CLARIFICATION
POLEN, C.J.
This cause is before us on appellee's motions for rehearing, rehearing en banc, and clarification. We deny the motion for rehearing en banc, but grant the motion for rehearing as to one issue. Accordingly, we withdraw our former opinion of April 25, 2001, and substitute the following in lieu thereof.
Hyundai Motor Company ("Hyundai") appeals after a jury entered a $6,500,000 verdict against it, which was later reduced to $3,000,000 on remittitur, on a wrongful death suit brought by Anthony Ferayorni, the personal representative of the estate ("Estate") of his 17-year old daughter, Paulette Ferayorni ("Paulette").[1] We reverse.
This case is before us for the second time. Estate originally initiated this action after Paulette was killed in a car accident on January 26, 1991. Ferayorni v. Hyundai Motor Co., 711 So.2d 1167, 1168 (Fla. 4th DCA 1998)("Ferayorni I"). The accident occurred when her vehicle, a 1990 Hyundai Excel ("Excel"), was struck by another vehicle. It is undisputed that Paulette was not properly utilizing her seatbelt at the time of the accident. The Excel's seatbelt system consisted of a "manual" lap belt and a "passive" shoulder belt;[2] however, Paulette was not wearing the lap belt, and she was wearing the shoulder harness under her arm, rather than over her shoulder. It is also undisputed that the cause of death was internal injuries caused by the pressure from the under-arm use of the seatbelt upon impact.
At the first trial, Estate's theory of the case was that Hyundai was aware that smaller drivers experience "neck-cutting" from the shoulder harness and that some respond by wearing the shoulder harness under their arms. It raised various claims against Hyundai, including that the seatbelt mechanism was defectively designed and that Hyundai negligently failed to *129 warn of the risk of improperly utilizing the seatbelt. After a week-long trial, the jury returned a verdict of no liability. On appeal, this court remanded for a new trial only on Estate's claim of strict liability failure to warn, due to improper jury instructions, but held that Estate was not entitled to a retrial on its other claims including negligent failure to warn. Id. at 1173.
The subsequent trial centered around Hyundai's three seatbelt warnings: two located on the visors and one located in the owner's manual. Dr. Robert Cunitz, a human factors psychologist[3] and Estate's expert in warnings, testified that substantial scientific literature had developed the various criteria by which warnings and labels could be evaluated. He then explained that he evaluated Hyundai's owner's manual and visor warnings against those criteria. He did not, however, run any experiments or use any focus groups to test reactions to the warnings because he felt it unnecessary due to the warnings' inadequacies.
Cunitz testified that the criteria used to evaluate warnings came from scientific literature that experimental psychologists have studied for several years. The criteria were as follows:
1. Ability to attract attentiona warning should use signal words like "danger" or "caution" and use colors like red or black and white;
2. Right time and placeevaluates whether the warning is located where it will be easily seen;
3. Ability to motivatemeasures whether the warning gives sufficient and truthful information about what could go wrong if the warning is ignored;
4. Instruct to avoid harmevaluates whether the warning provides adequate instructions as to how to avoid harm; and
5. Ability to be understoodmeasures whether the warning was drawn using simple terms and signals that could be understood.
Cunitz explained that an effective warning must pass all five criteria.
After analyzing Hyundai's three warnings against those criteria, Cunitz concluded that the warnings were all inadequate. Cunitz, however, believed the seat belt system had a design defect that induced passengers, specifically including Paulette, to wear the belt under the arm. He, therefore, made many comments, to which Hyundai objected, implying that the Excel's design was unsafe.
At the conclusion of trial, the jury found in favor of Estate and awarded $3,120,000 compensatory damages to Paulette's father and $3,380,000 to her mother for past and future pain and suffering. After a final judgment was entered based on the jury's verdict, the trial court denied Hyundai's post-trial motions dealing with liability, but granted Hyundai's motion for remittitur, reducing the total damage award to $3,000,000 for both parents, less set-offs. This timely appeal follows.
Hyundai initially argues that the trial court erred by not instructing the jury at the close of trial that the beltdesign was previously adjudged safe by the jury in Ferayorni I. In support of this argument, Hyundai points out that even though Estate was not permitted to relitigate the belt design, Cunitz made numerous comments implying that the Excel was designed unsafe. For example, the *130 following exchange occurred during his testimony:
Q. Under your rationale, Hyundai, to not have been subject to your criticism, would have to put some kind of sticker or label all over that dashboard to satisfy your rationale of warning about safety-critical matters, correct?
A. Not necessarily, sir. They have the option of designing a safer vehicle and obviating and eliminating the need for warnings.
We agree that this was error. We disagree with Hyundai that its proposed instruction was the proper cure for the problems created by Cunitz's testimony because it would have been too confusing for the jury. However, the trial court should, on re-trial, instruct Cunitz, out of the presence of the jury, to refrain from making any comments relating to the belt design and to limit his testimony to strict liability failure to warn. The court should also emphasize that non-compliance could result in sanctions, such as having his testimony stricken.
Hyundai next argues that the trial court erred by allowing Cunitz to offer an opinion on the adequacy of Hyundai's warnings without first holding a Frye[4] hearing. To be admissible in Florida courts, an expert's opinion relating to matters involving novel scientific evidence must be based on a scientific principle or discovery that is "sufficiently established to have gained general acceptance in the particular field in which it belongs." Frye, 293 F. at 1014; Hadden v. State, 690 So.2d 573, 576 (Fla.1997); Ramirez v. State, 651 So.2d 1164, 1167 (Fla.1995). The principal inquiry under the Frye test is whether the scientific theory or discovery from which an expert derives an opinion is reliable. Ramirez, 651 So.2d at 1167. Overall, the burden is on the proponent of the evidence to prove the general acceptance of both the underlying scientific principle and the testing procedures used to apply that principle to the facts of the case at hand. Id. at 1168.
In the present case, Hyundai did not ask for a Frye hearing as to the underlying science which was the basis of Cunitz's opinion or the application of that science to the warnings at issue. Hyundai did not object to the criteria on which Cunitz based his opinions, which were derived from general psychological research, literature, and studies pertaining to warnings and labels. Cunitz further testified without objection that the methods he employed to analyze the labels in this case were based on those known and established criteria. Hyundai's only objection was that Cunitz had not actually tested the Hyundai warnings at issue on "focus groups." None of the Florida cases cited by Hyundai construing Frye would require the actual submission of the warnings in this case to focus groups. Under Frye it is "the thing from which the deduction is made" which must be accepted. 293 F. at 1014. The trial court, accordingly, properly overruled Hyundai's objections based on Frye.
Last, we hold that the trial court erred by refusing to instruct the jury on the comparative negligence of the nonparty, accident-causing driver and include that driver on the verdict form. Florida's comparative negligence statute, section 768.81,[5] applies in strict liability cases. *131 Standard Havens Prods. v. Benitez, 648 So.2d 1192, 1197 (Fla.1994). It requires that fault be apportioned among all responsible entities who may have contributed to an accident, even though not all of them have been joined as defendants. Fabre v. Marin, 623 So.2d 1182, 1185 (Fla. 1993), receded from on other grounds, Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 659 So.2d 249 (Fla.1995). In this case, Hyundai presented evidence that the driver was negligent. Consequently, the trial court here should have included that driver on the verdict form. See Kidron, Inc. v. Carmona, 665 So.2d 289, 292 (Fla. 3d DCA 1995).
In reaching this decision, we note that the trial court relied upon Nash v. General Motors Corp., 734 So.2d 437 (Fla. 3d DCA), review granted, 749 So.2d 502 (Fla. 1999). In Nash, the estate of a deceased driver brought a products liability action against an automobile manufacturer after the driver was killed in a collision, alleging strict liability for a seatbelt design defect. Because the third district determined that drunk driving was an intentional tort, it held that the trial court erred by placing the non-party drunk driver on the same verdict form as the defendant. Id. at 440-41. The trial court in this case, which was bound to follow Nash as the only case on point, applied it because the court knew from the first trial that the accident-causing driver was drunk. In the second trial Hyundai only submitted evidence of negligence.
We, however, disagree with Nash. Although the act of driving while drunk qualifies as an intentional act, causing an accident while driving drunk is not as a matter of law an intentional tort. We, therefore, certify conflict with Nash on this point and instruct the trial court that it should, on re-trial, and upon request, place the accident-causing driver on the verdict form even if Hyundai submits evidence that she drove while drunk.
We therefore reverse and remand for a new trial on all issues which renders moot the cross-appeal.
SHAHOOD, J., concurs.
KLEIN, J., concurs specially with opinion.
KLEIN, J., concurring specially.
I agree entirely with the majority opinion and am writing separately only to address the Frye issue. Hyundai argues that Cunitz had to actually test the Hyundai warnings, relying on the following statement in Ramirez:
In utilizing the Frye test, the burden is on the proponent of the evidence to prove the general acceptance of both the underlying scientific principle and the testing procedures used to apply that principle to the facts of the case at hand.
651 So.2d at 1168 (emphasis added.).
What the emphasized language in Ramirez means is that in cases in which physical evidence is being scientifically examined, such as the knife and the wounds in Ramirez, or DNA, both the underlying science and the methods used in the case at hand must have gained general acceptance.
*132 The science involved in the present case is different.[6] It is like the child abuse profile or syndrome testimony which was at issue in Hadden v. State, 690 So.2d 573 (Fla.1997). In Hadden the underlying science did not pass the Frye test. It is clear, however, from reading our supreme court's opinion in Hadden, that had the underlying science passed the Frye test, the expert would have been permitted to render his opinion based on his observations of the child victim in light of the underlying science. Id. at 580, 581. As our supreme court observed in Ramirez: "The principle inquiry under the Frye test is whether the scientific theory or a discovery from which an expert derives an opinion is reliable." 651 So.2d at 1167. In this case there was no objection to the scientific theory.
Requiring the expert in the present case to submit the Hyundai warnings to one or more focus groups would not be scientific. In fact, submitting these particular warnings to a few focus groups, and presenting those results to the jury, would be the antithesis of science. It would merely be an experiment. As our supreme court pointed out in Stokes v. State, 548 So.2d 188, 193 (Fla.1989) the reasoning behind the Frye rule is that "a courtroom is not a laboratory, and as such it is not the place to conduct scientific experiments." Hyundai's objections were, accordingly, not well taken.
NOTES
[1] The estate did not agree to the remittitur and the trial court granted a new trial. Hyundai, the appellant, says in its brief it is appealing a final order, but in fact there is no final order. The only appealable order in this record is the order granting the new trial, which is appealable under rule 9.130(a)(4). Hyundai, as the party who sought the new trial, had no standing to appeal that order. The estate should have been the appellant and Hyundai the cross-appellant, but in any event we have jurisdiction.
[2] A "manual" seatbelt must be applied by the occupant, while a "passive" seatbelt is one which automatically moves into place around the occupant. Ferayorni I, 711 So.2d at 1173 n. 1.
[3] "Human factors," otherwise known as "ergonomics," concerns the relationship between human beings and the objects in the world around them.
[4] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).
[5] Section 768.81 provides,

(3) APPORTIONMENT OF DAMAGES In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability....
(4) APPLICABILITY
(a) This section applies to negligence cases. For purposes of this section, "negligence cases" includes, but is not limited to, civil actions for damages based upon theories of negligence, strict liability....
§§ 768.81(3), (4)(a), Fla. Stat.
[6] When asked by Hyundai's counsel whether human factors psychology is a science, Dr. Cunitz testified that the experimental part of what he did would be considered science, but that it would be more accurate to describe the human factors part as an applied science. By experimental Dr. Cunitz meant the underlying science which he had actually been involved in establishing.