842 So.2d 905 (2003)
HYUNDAI MOTOR COMPANY and Hyundai Motor America, Appellants/Cross-Appellees,
v.
Anthony J. FERAYORNI, as Personal Representative of the Estate of Paulette Jo Ferayorni, Appellee/Cross-Appellant.
Nos. 4D00-643, 4D00-980.
District Court of Appeal of Florida, Fourth District.
February 19, 2003.
Rehearing Denied May 1, 2003.
*906 Francis M. McDonald and Wendy F. Lumish of Carlton Fields, Orlando; Cabaniss, Conroy & McDonald, LLP, Orlando (withdrawn after filing brief); Leslie G. Landau and Robert A. Brundage of Bingham McCutchen LLP, San Francisco, CA, for appellants/cross-appellees.
Thomas D. Lardin of Thomas D. Lardin, PA, Fort Lauderdale, for appellee/cross-appellant.

ON MOTIONS FOR REHEARING, REHEARING EN BANC, AND CLARIFICATION
POLEN, C.J.
This cause is before us on appellee's motions for rehearing, rehearing en banc, and clarification. We deny the motion for rehearing en banc, but grant the motion for rehearing. Accordingly, we withdraw our former opinion of December 11, 2002 and substitute the following in lieu thereof.
Hyundai Motor Company ("Hyundai") appeals after a jury entered a $6,500,000 verdict against it, which was later reduced to $3,000,000 on remittitur, on a wrongful death suit brought by Anthony Ferayorni, the personal representative of the estate ("Estate") of his 17-year old daughter, Paulette Ferayorni ("Paulette").
This case is before us for the second time. Estate originally initiated this action after Paulette was killed in a car accident on January 26, 1991. Ferayorni v. Hyundai Motor Co., 711 So.2d 1167, 1168 (Fla. 4th DCA 1998)("Ferayorni I"). The accident occurred when her vehicle, a 1990 Hyundai Excel ("Excel"), was struck by another vehicle. It is undisputed that Paulette was not properly utilizing her seatbelt at the time of the accident. The Excel's seatbelt system consisted of a "manual" lap belt and a "passive" shoulder belt;[1] however, Paulette was not wearing the lap belt, and she was wearing the shoulder harness under her arm, rather than over her shoulder. It is also undisputed that the cause of death was internal injuries caused by the pressure from the under-arm use of the seatbelt upon impact.
At the first trial, Estate's theory of the case was that Hyundai was aware that smaller drivers experience "neck-cutting" from the shoulder harness and that some respond by wearing the shoulder harness under their arms. It raised various claims against Hyundai, including that the seatbelt mechanism was defectively designed and that Hyundai negligently failed to warn of the risk of improperly utilizing the seatbelt. After a week-long trial, the jury returned a verdict of no liability. On appeal, this court remanded for a new trial only on Estate's claim of strict liability failure to warn, due to improper jury instructions, but held that Estate was not entitled to a retrial on its other claims *907 including negligent failure to warn. Id. at 1173.
The subsequent trial centered around Hyundai's three seatbelt warnings: two located on the visors and one located in the owner's manual. Dr. Robert Cunitz, a human factors psychologist[2] and Estate's expert in warnings, testified that substantial scientific literature had developed the various criteria by which warnings and labels could be evaluated. He then explained that he evaluated Hyundai's owner's manual and visor warnings against those criteria. He did not, however, run any experiments or use any focus groups to test reactions to the warnings because he felt it unnecessary due to the warnings' inadequacies.
Cunitz testified that the criteria used to evaluate warnings came from scientific literature that experimental psychologists have studied for several years. The criteria were as follows:
1. Ability to attract attentiona warning should use signal words like "danger" or "caution" and use colors like red or black and white;
2. Right time and placeevaluates whether the warning is located where it will be easily seen;
3. Ability to motivatemeasures whether the warning gives sufficient and truthful information about what could go wrong if the warning is ignored;
4. Instruct to avoid harmevaluates whether the warning provides adequate instructions as to how to avoid harm; and
5. Ability to be understoodmeasures whether the warning was drawn using simple terms and signals that could be understood.
Cunitz explained that an effective warning must pass all five criteria. After analyzing Hyundai's three warnings against those criteria, Cunitz concluded that the warnings were all inadequate. Cunitz, however, believed the seat belt system had a design defect that induced passengers, specifically including Paulette, to wear the belt under the arm. He, therefore, made comments, to which Hyundai objected, and which objections were sustained, implying that the Excel's design was unsafe.
At the conclusion of trial, the jury found in favor of Estate and awarded $3,120,000 compensatory damages to Paulette's father and $3,380,000 to her mother for past and future pain and suffering. After a final judgment was entered based on the jury's verdict, the trial court denied Hyundai's post-trial motions dealing with liability, but granted Hyundai's motion for remittitur, reducing the total damage award to $3,000,000 for both parents, less set-offs. The estate did not agree to the remittitur, resulting in an order granting a new trial on damages.
Before addressing the arguments raised by the parties, this court must detail the progression of this case on appeal. This court initially issued an opinion in this second appeal in April of 2001. In that opinion we reversed and sent the case back to the trial court for a new trial pointing out two harmful errors and further instructing the trial court to caution Dr. Cunitz from testifying about anything related to the design issue. We rejected the argument that the trial court erred by failing to instruct the jury on the conclusions of "Ferayorni I." One of the grounds supporting our reversal was our conclusion that the trial court erred by allowing Dr. Cunitz to testify without having previously conducted a Frye hearing. In addition, specifically disagreeing with Nash v. General *908 Motors Corp., 734 So.2d 437 (Fla. 3d DCA), rev. granted, 749 So.2d 502 (Fla. 1999), approved in part by D'Amario v. Ford Motor Co., 806 So.2d 424 (Fla.2001), we found error with the trial court's refusal to include a non-party defendant, who was a drunk driver, on the verdict form. Subsequently, as a result of appellee's motions for rehearing, rehearing en banc, and clarification, we issued a new opinion in August of 2001.
In the opinion issued in August of 2001, we again sent the case back for a new trial. Once again, we rejected the argument that the trial court erred by failing to specially instruct the jury on the conclusions reached in "Ferayorni I." We disagreed with Nash, and found that the trial court erred by refusing to instruct the jury on comparative negligence of the drunk driver and include that driver on the verdict form. However, in this opinion we receded from our prior opinion and determined that the trial court did not err by allowing Dr. Cunitz to testify without first having conducted a Frye hearing.
The Estate sought review of our opinion in the Florida Supreme Court and, in July of 2002, this court received a mandate from the Florida Supreme Court resulting from the Supreme Court's decision in D'Amario. In D'Amario, the Florida Supreme Court specifically agreed with the third district in Nash and held that it was error for a drunk driver to appear on the same verdict form as the negligent tortfeasor in a product liability action. Id. Accordingly, we are compelled to withdraw that portion of our prior opinion finding reversible error in not including the drunk driver on the verdict form.
On remand we must now return our attention to Hyundai's first issue. In support of this argument, Hyundai points out that even though Estate was not permitted to re-litigate the seat belt design, Cunitz made comments implying that the Excel was designed unsafe. For example, the following exchange occurred during his cross-examination:
Q. Under your rationale, Hyundai, to not have been subject to your criticism, would have to put some kind of sticker or label all over that dashboard to satisfy your rationale of warning about safety-critical matters, correct?
A. Not necessarily, sir. They have the option of designing a safer vehicle and obviating and eliminating the need for warnings.
We agree that this testimony given by Dr. Cunitz was improper. However, the trial court properly sustained objections that were made during the testimony. As we held in our previous opinions, we reject Hyundai's argument that the trial court improperly rejected the request to give the jury a special instruction on the findings of the court in `Ferayorni I,' because it would have been too confusing for the jury. Although we previously characterized these comments as error in our opinion which also reversed because of the drunk driver issue, we are persuaded by the estate's motion for rehearing that these comments alone do not warrant a new trial.
Because our earlier opinions had reversed for a new trial on all issues, we had deemed the cross appeal challenging the remittitur moot. However, since we now are affirming, we address the cross-appeal.
The jury awarded $3,380,000 to Paulette's mother and $3,120,000 to Paulette's father for past and future pain and suffering. The different amounts would be consistent with the fact that Paulette's mother had a longer life expectancy. In the order granting the remittitur the court appeared to be motivated primarily by the fact that counsel had only suggested $3,000,000 in closing argument. It is not clear, however, from the transcript, whether counsel was suggesting $3,000,000 total or $3,000,000 for each parent. The argument *909 is just as susceptible of the latter interpretation as the former.
The trial court also relied heavily on the discussion of amounts awarded in Florida for child wrongful death cases in Williams v. United States, 681 F.Supp. 763 (N.D.Fla.1988). That case, however, was decided in 1988 and relied on verdicts returned between 1974 and 1987. The Williams opinion recognized that cases decided more than five years earlier were of limited value. 681 F.Supp. at 765.
Substantially higher verdicts have been approved in child wrongful death cases by this court in recent years. See e.g., St. Mary's Hospital, Inc. v. Brinson, 685 So.2d 33 (Fla. 4th DCA 1996)($4,500,000 to each parent for the death of a nineteen month old); and Kammer v. Hurley, 765 So.2d 975 (Fla. 4th DCA 2000)($2,500,000 to each parent for a wrongful stillbirth). We conclude that the order granting a remittitur is an abuse of discretion under Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999). We therefore reverse and remand for entry of a judgment for the full amounts awarded by the jury.
KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] A "manual" seatbelt must be applied by the occupant, while a "passive" seatbelt is one which automatically moves into place around the occupant. Ferayorni I, 711 So.2d at 1173 n. 1.
[2] "Human factors," otherwise known as "ergonomics," concerns the relationship between human beings and the objects in the world around them.