# Third District Court of Appeal

## State of Florida

Opinion filed February 2, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-38
Lower Tribunal No. 11-23377
_____

## R.J. Reynolds Tobacco Company, et al.,
Appellants,

vs.

## Kenneth Gloger, etc.,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Arnold & Porter Kaye Scholer LLP, and Geoffrey J. Michael and David M. Menichetti (Washington, DC); King & Spalding LLP, and William L. Durham II and Val Leppert (Atlanta, GA), for appellants.

Ratzan, Weissman & Boldt, and Kimberly L. Boldt, Stuart N. Ratzan, Stuart J. Weissman, Mario R. Giommoni and Ryan C. Tyler; Crabtree & Auslander, John G. Crabtree, Charles M. Auslander, Linda A. Wells, and Brian C. Tackenberg, for appellee.

Before EMAS, LINDSEY and GORDO, JJ.

EMAS, J.

**INTRODUCTION**

In this appeal from an <u>Engle</u>-progeny tobacco case,[1] Philip Morris USA Inc. and R.J. Reynolds Tobacco Company appeal a final judgment entered following a jury verdict in favor of Kenneth Gloger, as personal representative of the estate of his wife, Irene Gloger. The jury awarded a total of $42.5 million in compensatory and punitive damages.

Appellants, defendants below, raise several arguments on appeal. Among them is that the trial court erred in denying a cause challenge to a prospective juror thus requiring appellants to utilize a peremptory challenge to strike that juror. The prospective juror's responses during voir dire, they argue, created at least a reasonable doubt about her ability to be impartial and to follow the law if selected to serve on the jury. We agree and reverse for a new trial.

**FACTS AND BACKGROUND**

During jury selection, the attorneys questioned the prospective jurors about the parties' respective burdens of proof, and inquired if they could follow the trial court's instructions on the law.

---

[1] <u>Engle</u>-progeny cases arise out of a class action brought by a group of smokers, or their survivors, against major cigarette companies and two industry organizations for smoking-related injuries caused by an addiction to nicotine. <u>See</u> <u>Engle v. Liggett Grp., Inc.</u>, 945 So. 2d 1246 (Fla. 2006).

One of the questions posed by defense counsel was whether any of the potential jurors believed that someone who smokes daily is addicted to cigarettes; the rationale being that such a belief would improperly alleviate the smoker of her burden to prove she was addicted, shifting the burden instead to defendants to prove she was *not* addicted.[2] After it was explained to the prospective jurors that the burden was on the plaintiff to prove she was addicted, defense counsel asked: "[D]o you believe that every smoker who smokes is addicted?" When it was her turn to answer, Prospective Juror 8 replied: "If they smoke every day, I do feel it's an addiction. . .. A habitual addiction or a regular addiction, chemical addiction." Defense counsel followed up with Prospective Juror 8:

> DEFENSE COUNSEL: Let me ask you this, as you've heard, that's going to be one of the issues in this case, right? You also heard [plaintiff's counsel] talk with you about how they have the burden to prove to you that Mrs. Gloger was addicted. Do you remember that?
>
> PROSPECTIVE JUROR 8: Yes.
>
> DEFENSE COUNSEL: Now, there is a time later on in the case that the defendants, when it comes to comparing the fault, that's one of – an affirmative defense we have, even though they've pled that she's at fault, we may have a burden in that regard. But

---

[2] A plaintiff's addiction to smoking an <u>Engle</u> defendant's cigarettes containing nicotine is an element that must be proven to prevail on an <u>Engle</u> strict liability or negligence claim. <u>See, e.g.</u>, <u>Philip Morris USA, Inc. v. Douglas</u>, 110 So. 3d 419, 430 (Fla. 2013); <u>Philip Morris USA, Inc. v. Santoro</u>, 298 So. 3d 630, 636 (Fla. 4th DCA 2020).

3

we don't have, the defense when I say 'we,' we don't have a burden to prove to you that she was not addicted. Do you understand what I'm saying?

PROSPECTIVE JUROR 8: Yes.

DEFENSE COUNSEL: Is it fair that you would want us to prove to you that she was not addicted if the evidence is that she smoked every day?

PROSPECTIVE JUROR 8: No.

Given Prospective Juror 8's responses, the trial court made further inquiry:

TRIAL COURT: Because I thought you were saying before that you felt if someone smoked every day, they're addicted, and because the tobacco company doesn't have to prove she's not addicted, it would not be fair for you to even be on the jury. Now you are saying it would be case by case. That seems to -- you want to think about it a little more.

PROSPECTIVE JUROR 8: So I would say it would be case by case. I will take that back, and I'll say it's case by case because, yes, they can be addicted, but they could stop cold turkey if they had the willpower to do it or the proper medical care.

Defense counsel followed up to further clarify Prospective Juror 8's position:

DEFENSE COUNSEL: And I think what the judge and I were hearing is that you would expect us to prove to you she was not addicted; is that fair?

PROSPECTIVE JUROR 8: Yes.

DEFENSE COUNSEL: Even though we don't have a burden?

4

PROSPECTIVE JUROR 8: Exactly.

DEFENSE COUNSEL: Okay. And that's something because of who you are?

PROSPECTIVE JUROR 8: Um-hum (affirmative).

At the conclusion of jury selection, defendants challenged Prospective Juror 8 for cause, given her statements and responses during voir dire. Defense counsel argued that Prospective Juror 8 "said that we have to disprove addiction after it was explained to her again and again that we have no burden." The trial court disagreed with that characterization of the prospective juror's statements, and denied defendants' for-cause challenge.[3] Gloger's counsel countered that the juror's testimony on addiction was merely her opinion; instead, the pertinent question was whether the juror would be "fair and impartial and listen to the evidence" which—according to counsel— the juror confirmed she would do if chosen to sit on the jury.

Because the for-cause challenge was denied, defendants were required to use a peremptory challenge to strike Prospective Juror 8. Appellants eventually used their allotted peremptory challenges and requested an additional peremptory to strike another specifically identified

---

[3] Defense counsel sought to present the trial court with a transcript of the relevant portion of Prospective Juror 8's statements and responses, but the trial court declined to review it.

juror (prospective juror 131). The trial court denied the request for an additional peremptory challenge, and as a result, prospective juror 131 served on the jury.

Ultimately, the jury returned a verdict of compensatory damages in the amount of $15 million, and punitive damages in the amount of $27.5 million ($11 million against PM USA and $16.5 million against RJ Reynolds), for a total verdict of $42.5 million. Judgment was entered upon the verdict, and this appeal followed. We review the trial court's denial of the for-cause challenge for an abuse of discretion. See Hedvall v. State, 283 So. 3d 901, 913 (Fla. 3d DCA 2019).

**ANALYSIS AND DISCUSSION**

As the Florida Supreme Court has observed:

> Florida . . . adhere[s] to the general rule that it is reversible error for a court to force a party to use peremptory challenges on persons who should have been excused for cause, provided the party subsequently exhausts all of his or her peremptory challenges and an additional challenge is sought and denied.

Matarranz v. State, 133 So. 3d 473, 483 (Fla. 2013) (quoting Hill v. State, 477 So. 2d 553, 556 (Fla. 1985)). A trial court's error in denying a for-cause challenge "cannot be harmless because it abridged appellant's right to peremptory challenges by reducing the number of those challenges available [to] him." Hill, 477 So. 2d at 556.

6

Florida law requires that a jury be free of "any element of prejudice for or against either party," Matarranz, 133 So. 3d at 484. To achieve such a laudable goal, "[a] juror must be excused for cause if any reasonable doubt exists as to whether the juror possesses an impartial state of mind," Smith v. State, 699 So. 2d 629, 635 (Fla. 1997). When evaluating a for-cause challenge, the trial court must look to the "questions posed to and the answers received from the juror to determine whether the juror's responses are 'equivocal enough to generate a reasonable doubt' as to the juror's fitness to serve." Hedvall, 283 So. 3d at 912 (quotation omitted). See also Singer v. State, 109 So. 2d 7, 23-24 (Fla. 1959) (holding "if there is basis for any reasonable doubt as to any juror's possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial he should be excused on motion of a party, or by the court on its own motion"); Nash v. Gen. Motors Corp., 734 So. 2d 437, 440 (Fla. 3d DCA 1999) ("When any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial verdict based solely on the evidence submitted and the instructions on the law given to her by the court, she should be excused.")

Furthermore, "[c]lose calls involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than

7

leaving doubt as to impartiality," <u>Straw v. Associated Doctors Health and Life</u>, 728 So. 2d 354, 356 (Fla. 5th DCA 1997) (quoting <u>Goldenberg v. Reg'l Import and Exp. Trucking Co., Inc.</u>, 674 So. 2d 761, 764 (Fla. 4th DCA 1996)), because "if error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors—which is interpreted to mean that the mind of the proposed juror should not contain any element of prejudice for or against either party in a cause to be tried before him." <u>Matarranz</u>, 133 So. 3d at 484 (citations omitted).

While we recognize the trial court's unique vantage point in the determination of juror bias, and the corresponding deference accorded the trial court's determination, such deference is not without limits. The instant case presents just such an instance in which there was plainly a reasonable doubt about Prospective Juror 8's ability to be fair and impartial and to follow the law. Under these circumstances, the trial court erred in denying defendants' for-cause challenge, requiring defendants to use a peremptory challenge to strike the prospective juror.[4]

---

[4] After exhausting their allotted peremptory challenges, defendants requested an additional peremptory challenge which defendants sought to use to strike another juror whom they objected to. This request was denied by the trial court, and that objected-to juror ultimately served on the jury. This issue has thus been properly preserved. <u>See</u> <u>Trotter v. State</u>, 576 So. 2d 691 (Fla. 1990); <u>Hedvall v. State</u>, 283 So. 3d 901 (Fla. 3d DCA 2019).

8

Turning to the merits of the claim, Prospective Juror 8 stated during jury selection that she believed anyone who smoked every day was addicted to smoking, and even after it was explained—and she acknowledged—that defendants did not have the burden of proof on this issue, the prospective juror indicated she would "expect [defendants] to prove" Mrs. Gloger "was not addicted" to cigarettes.

It is true that, in follow-up questioning by the trial court itself, Prospective Juror 8 indicated she would have to consider the question of addiction on a case-by-case basis:

> TRIAL COURT: Because I thought you were saying before that you felt if someone smoked every day, they're addicted, and because the tobacco company doesn't have to prove she's not addicted, it would not be fair for you to even be on the jury. Now you are saying it would be case by case. That seems to—you want to think about it a little more.
>
> PROSPECTIVE JUROR 8: **So I would say it would be case by case. I will take that back, and I'll say it's case by case because, yes, they can be addicted, but they could stop cold turkey if they had the willpower to do it or the proper medical care.**

(Emphasis added.)

While the prospective juror responded that she would "take back" her earlier statements and would decide the question of addiction on a case-by-case basis, one cannot ignore the stark contrast with her initial responses to

9

questions on this issue, which cast serious doubt on her suitability to sit as a juror in this case. Importantly, and as the <u>Matarranz</u> Court observed:

> Initial reactions and comments from a prospective juror offer a unique perspective into whether an individual can be fair and unbiased. Here, the Juror's responses clearly indicated that she was not suited to serve in this trial. It was only after skillful lawyering and questioning that the process produced a contradiction from the Juror.

***

> Any lawyer who has spent time in our courtrooms, whether civil or criminal, has experienced the frustration of prospective jurors expressing extreme bias against his or her client and then recanting upon expert questioning by the opposition. . . . When a juror expresses his or her unease and reservations based upon actual life experiences, as opposed to stating such attitudes in response to vague or academic questioning, it is not appropriate for the trial court to attempt to "rehabilitate" a juror into rejection of those expressions—as occurred here. At no point should prospective jurors feel compelled to reject genuine feelings regarding actual life experiences because courts or counsel have engaged in a dialogue that generates embarrassment, nor should our courts empanel jurors who maintain attitudes and feelings regarding the issue currently before the court that are anything but impartial.

<u>Matarranz</u>, 133 So. 3d at 490. <u>See also</u> <u>Hamilton v. State</u>, 547 So. 2d 630 (Fla. 1989) (reversing first-degree murder conviction for a new trial, where prospective juror stated defendant would have to submit evidence to overcome juror's preconceived belief of defendant's guilt, creating reasonable doubt of her ability to follow the law and to sit as a fair and impartial juror; this reasonable doubt was not overcome by juror's eventual

10

statement that she could base her verdict on the evidence at trial and the law); Salgado v. State, 829 So. 2d 342, 345 (Fla. 3d DCA 2002) (reversing for new trial where prospective juror's responses to court and counsel's questioning created a reasonable doubt as to his ability to be a fair and impartial juror, even though the juror eventually stated he would follow the law).

Moreover, Prospective Juror 8's responses to the court's follow-up questioning merely indicated that she would decide on a case-by-case basis; she did not alter her responses on the question of which party must prove (or disprove) the element of addiction. This was made plain by defense counsel's final questioning of the prospective juror, which immediately followed the above inquiry by the trial court:

> DEFENSE COUNSEL: And I think what the judge and I were hearing is that **you would expect us to prove to you she was not addicted**; is that fair?
>
> PROSPECTIVE JUROR 8: Yes.
>
> DEFENSE COUNSEL: **Even though we don't have a burden?**
>
> PROSPECTIVE JUROR 8: **Exactly**.
>
> DEFENSE COUNSEL: **Okay. And that's something because of who you are?**
>
> PROSPECTIVE JUROR 8: Um-hum (affirmative).

(Emphasis added.)

Simply stated, given her responses to questioned and personal experiences[5] discussed during jury selection, there was a reasonable doubt as to whether Prospective Juror 8 could set aside her preconceived belief that a daily smoker is addicted and that defendants bore the burden of proving the smoker was not addicted. See Hill, 477 So. 2d at 556 (explaining that a juror should be excused if one side has to overcome a preconceived belief); Salgado 829 So. 2d at 344 ("A juror is not impartial when one side must overcome a preconceived opinion in order to prevail.") (quotation omitted); Nash, 734 So. 2d at 440 (explaining that a prospective juror must be excused where there is reasonable doubt about her "ability to follow the law"); Weinstein Design Grp., Inc. v. Fielder, 884 So. 2d 990, 995 (Fla. 4th DCA 2004) (explaining that excusal is required when one party is starting the trial with "the edge" in the juror's mind).

**CONCLUSION**

The trial court erred in denying defendants' for-cause challenge of Prospective Juror 8 and further erred in denying defendants' request for an additional peremptory challenge after defendants struck Prospective Juror 8

---

[5] During jury selection, Prospective Juror 8 recounted that her father and grandfather had passed away from lung cancer associated with smoking.

12

peremptorily, exhausting all their peremptory challenges. We therefore reverse and remand for a new trial.[6]

---

[6] Although we reverse for a new trial on this single basis, we note that one of the other issues raised by appellants was that the trial court erred in permitting plaintiff's counsel, during cross-examination of defendants' expert, to recite in front of the jury the contents and conclusions of a study on the harmful effects of e-cigarettes in the absence of the witness' recognition, or the trial court's finding, of authoritativeness. The e-cigarettes evidence was presented during the punitive damages phase of trial and relevant to appellants' theory that they had attempted to make cigarettes safer. Section 90.706, Florida Statutes (2019) provides:

> Statements of facts or opinions on a subject of science, art, or specialized knowledge contained in a published treatise, periodical, book, dissertation, pamphlet, or other writing may be used in cross-examination of an expert witness if the expert witness recognizes the author or the treatise, periodical, book, dissertation, pamphlet, or other writing to be authoritative, or, notwithstanding nonrecognition by the expert witness, if the trial court finds the author or the treatise, periodical, book, dissertation, pamphlet, or other writing to be authoritative and relevant to the subject matter.

The expert witness did not recognize the study as authoritative, nor did the trial court make a finding of authoritativeness. Absent the requisite predicate of authoritativeness under section 90.706, it was error for the trial court to permit plaintiff's counsel to recite to the jury, during cross-examination of the defendants' expert witness, "[s]tatements of facts or opinions" contained within the study on the harmful effects of e-cigarettes. Call v. Tirone, 522 So. 2d 533, 534 (Fla. 3d DCA 1988) (holding: "It is settled by statute, case law, and treatises, that statements contained in medical literature cannot be used to cross-examine a witness unless the literature is established to be a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice."); Myron By and Through Brock v. Doctors Gen. Hosp., 704 So. 2d 1083, 1092 (Fla. 4th DCA 1997) (holding "the treatises should not have been used in cross-examination unless either the expert [witness] or the trial court recognized their authoritativeness. Since

13

neither did, it was error to permit cross-examination using the treatises"); Brown v. Crane, Phillips, Thomas & Metts, P.A., 585 So. 2d 947, 948 (Fla. 2d DCA 1991) (reversing for new trial, holding "it was error to permit the defense attorney to read portions of a medical text in the presence of the jury while [plaintiff's expert] was under cross-examination. [Plaintiff's expert] was unfamiliar with the chapter and did not recognize the text as being authoritative. Further, the defendants failed to establish independently the authoritativeness of the author or the text.")